**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**
**CASE NO.:**

**STACY PARKER,**
**an Individual,**

**Plaintiff,**

**v.**

**PLATTNER AUTOMOTIVE GROUP, INC.**
**a Florida Profit Corporation,**

**Defendant.**
_______________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**WITH INJUNCTIVE AND DECLARATORY RELIEF REQUESTED**

Plaintiff, **STACY PARKER** ("Plaintiff"), by and through his undersigned counsel, hereby files this Complaint against Defendant, **PLATTNER AUTOMOTIVE GROUP, INC.** ( "Defendant"), and states as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendant for race discrimination to pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII"), and for breach of contract, promissory estoppel, and unjust enrichment, to recover from Defendant back pay, compensatory damages, other monetary damages, equitable relief, front pay, declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff is an adult individual.

3. Defendant is a Florida Profit Corporation that is located and does business in, among others, Hendry County, Florida, and is therefore within the jurisdiction of the Court.

4. At all times relevant hereto, Plaintiff was an employee of Defendant.

5. Plaintiff worked for Defendant in Hendry County, Florida, and this venue is therefore proper.

6. This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331, as they arise under Title VII of The Civil Rights Act of 1964.

7. This Court also has supplemental jurisdiction over Plaintiff's breach of contract, promissory estoppel, and unjust enrichment claims, as they arise out of the same operative facts and circumstances as his Title VII claims.

8. At all times material, Plaintiff was protected during his employment with Defendant by Title VII because Plaintiff is an African-American male, which is a protected category under Title VII.

9. At all times material, Plaintiff was protected during his employment with Defendant by Title VII because Plaintiff was discriminated against on the basis of his race.

10. Defendant was at all times an "employer" as envisioned by Title VII as

it employed in excess of fifteen (15) employees.

## CONDITIONS PRECEDENT

11. On or around August 11, 2026, Plaintiff dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") alleging racial discrimination against Defendant.

12. On or around August 22, 2026, the EEOC issued a Notice of Right to Sue against Defendant, giving Plaintiff the right to bring a civil action on his federal claims within 90 days of his receipt of the same.

13. Plaintiff timely files this action within the applicable period of limitations against Defendant.

14. All conditions precedent to this action have been satisfied and/or waived.

## FACTUAL ALLEGATIONS

15. Plaintiff worked for Defendant as a Service Director from March 18, 2026, until June 5, 2026.

16. On March 11, 2026, Defendant offered Plaintiff an employment position with specific compensation terms set down in writing and signed by both parties.

17. The written pay plan provided that Plaintiff would receive $72,000 per

year in salary, $6,000 per year in car allowance, and 1% of the total gross profit from each of the seven service departments (parts and labor), 3% of all obsolete parts sales, and additional bonuses based on organizational performance.

18. Commissions were to be paid monthly for the previous month.

19. Plaintiff accepted Defendant's offer and terms of employment, salary, and benefits, and began work on March 18, 2026, in consideration and reasonable reliance on these terms. A true copy of this written agreement is attached hereto as Exhibit A.

20. On April 17, 2026, which was Plaintiff's first pay date for commissions, Plaintiff checked his bank account and discovered that he had not received any commission payment for March.

21. Plaintiff reached out by text message to Defendant Comptroller, Darren Durst ("Mr. Durst"), to inquire why he did not receive anything.

22. Mr. Durst told Plaintiff that he and Owner Douglas Plattner ("Mr. Plattner") were trying to figure out how to pay him since he spent his time in March at one location, but to "rest assured" that he would get that money and Mr. Durst was hoping to have that for him that same day.

23. That payment never materialized.

24. On April 20, 2026, Plaintiff again reached out to Mr. Durst via text to inquire about his commissions, and Mr. Durst stated that he had asked Mr. Plattner

about it but offered no other information.

25. On April 22, 2026, Plaintiff reached out to Mr. Durst again with an idea of how Mr. Plattner could pay him based on a formula that Plaintiff had used to pay partial commissions in the past, and Mr. Durst stated he would "run it by [Mr. Plattner]."

26. On April 24, 2026, Plaintiff again reached out via text to Mr. Durst, who stated that he "wasn't getting anywhere on this" and that Plaintiff should reach out to Mr. Plattner himself and "make his case directly to him."

27. That same day, Plaintiff drafted an email regarding this non-payment and sent it to HR and the Executive Team.

28. No response to this email was ever received.

29. Plaintiff also sent a text message directly to Mr. Plattner asking about his commission and sent him his idea on how he could be compensated.

30. Plaintiff has not received any response from Mr. Plattner to this inquiry.

31. Plaintiff worked all of April 2026.

32. On May 15, 2026, commissions were again paid to every other manager except Plaintiff.

33. Plaintiff reached out to Mr. Durst by text to ask when commissions were being paid, and Mr. Durst told him he would need to ask Mr. Plattner about it.

34. Plaintiff reached out to Mr. Plattner by text to inquire what was going

on with his commissions since Mr. Durst told him that Mr. Plattner was handling that matter.

35. Plaintiff has yet to receive any response to his inquiry.

36. Also on May 15, 2026, Plaintiff sent an email to Defendant's HR Department and the Executive Team voicing his displeasure with the fact that his pay plan was not being upheld and that he was facing serious financial issues due to not receiving pay.

37. Plaintiff never received a response to this inquiry either.

38. On June 5, 2026, still not having received any of his commission payouts, Plaintiff sent an email to HR and Defendant executives that, unfortunately, he needed to resign due to Defendant's failure to make payment on his earned commissions.

39. Plaintiff requested his earned commissions and salary owed through June 5, 2026.

40. Plaintiff received his salary deposit but did not receive his commission.

41. Plaintiff was the only African-American employed by Defendant at his managerial level, and was the only one who did not receive his commission.

42. Defendant's failure to pay Plaintiff's commissions, though Defendant paid commission to all other similarly-situated employees, is clear evidence of Defendant's intent to discriminate due to Plaintiff's race.

43. Defendant did not have a good faith basis for its actions.

44. At the time of separation, Defendant owed Plaintiff approximately $17,000 in commission payments, as well as additional amounts for obsolete parts sales and performance bonuses that Plaintiff is unable to calculate without the full extent of the records.

45. As a result of Defendant's illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which he is entitled.

46. Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII DISPARATE TREATMENT

47. Plaintiff re-alleges and re-adopts the allegations contained in Paragraphs 1 through 6, and 8 through 46, above.

48. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against race discrimination under Title VII.

49. The discrimination/disparate treatment to which Plaintiff was subjected was based on his race.

50. Plaintiff, who was the only African American employed by Defendant in that role, was the only one who did not receive his commission payments by

Defendant, while other white employees in a similar role received their commission payments.

51. Defendant's discriminatory actions were egregious, and provide direct evidence of its discriminatory motive to discriminate against Plaintiff.

52. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

53. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

54. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

55. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

56. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff requests that this Court enter judgment in Plaintiff's favor and against Defendant on this claim of race discrimination under

Title VII of the Civil Rights Act of 1964 and award Plaintiff back pay, lost employment benefits, front pay, compensatory damages for emotional distress and other losses, punitive damages to the extent permitted by law, prejudgment and postjudgment interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**COUNT II: BREACH OF CONTRACT**

57. Plaintiff re-alleges and incorporates all of the allegations contained within Paragraphs 1 through 5, 7, 15 through 40, and 44 through 45, above.

58. Plaintiff and Defendant entered into a compensation agreement, as described above, in which Defendant agreed to pay Plaintiff wages and commission throughout the duration of Plaintiff's employment with Defendant, in exchange for the performance of Plaintiff's work duties for Defendant.

59. Plaintiff performed the necessary work under the Agreement to vest the commissions to which he was contractually entitled, and in consideration of Defendant's offer and Plaintiff' acceptance of same.

60. Defendant materially breached the parties' Agreement by refusing to pay Plaintiff for his contractually obligated wages pursuant to the Agreement.

61. Plaintiff has been damaged due to Defendant's willful/continued failure to pay Plaintiff the appropriate agreed upon compensation, necessitating this lawsuit.

62. Pursuant to Section 448.08, Florida Statutes, Plaintiff is entitled to costs

of this action and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff requests judgment against the Defendant for damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just and proper.

**COUNT III: PROMISSORY ESTOPPEL**

63. Plaintiff re-alleges and incorporates all of the allegations contained within Paragraphs 1 through 5, 7, 15 through 18, 20 through 40, and 44 through 45, above.

64. Defendant represented to Plaintiff that Defendant would pay Plaintiff certain commissions and wages based upon Plaintiff's performance of employment services.

65. Defendants failed to pay Plaintiff his earned wages and commissions.

66. Plaintiff relied, to his detriment, on Defendants' representations, by continuing to work for him with the promise that Defendants would pay him properly and as promised.

67. Plaintiff has been damaged as a result of Defendants' representations, and his reasonable reliance on same.

**WHEREFORE**, Plaintiff requests judgment against the Defendant for damages and prejudgment interest, together with costs of suit and reasonable

attorney fees, and such other and further relief as this Court may deem just and proper.

## COUNT IV: UNJUST ENRICHMENT

68. Plaintiff re-alleges and incorporates all of the allegations contained within Paragraphs 1 through 5, 7, 15, 20 through 40, and 44 through 45, above.

69. As an alternative pleading to the allegations in Count II and Count III, Plaintiff worked for Defendant but was not properly compensated for his services rendered.

70. Additionally, Defendant benefited from Plaintiff's services, but failed to pay proper commissions.

71. Defendant was aware that Plaintiff expected to be compensated for his services as agreed upon by the parties.

72. Defendant was unjustly enriched by the work Plaintiff performed without receiving proper compensation for same.

73. Plaintiff has been damaged due to Defendant's willful failure to pay Plaintiff for all salaries, wages, and commissions earned and vested during his employment with Defendant.

74. Pursuant to § 448.08, Florida Statutes, Plaintiff is entitled to costs of this action and their reasonable attorney's fees.

**WHEREFORE**, Plaintiff requests judgment against the Defendant for

damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 18th day of November, 2026.

Respectfully Submitted,

***/s/ Tanner M. Borges***
Tanner M. Borges, Esq.
Florida Bar No. 1035473
RICHARD CELLER LEGAL, P.A.
7951 SW 6th St, Suite 316
Plantation, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-Mail: tanner@floridaovertimelawyer.com
*Attorney for Plaintiff*